UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CRYSTAL WALKER,<br><br>                Plaintiff,<br>    v.  | **DECISION**<br>**and**<br>**ORDER**<br><br>22-CV-445WMS(F) |
| I C SYSTEM, INC.,<br><br>                Defendant. | |

_____

APPEARANCES:    ZEMEL LAW, LLC
                Attorneys for Plaintiff
                DANIEL ZEMEL, of Counsel
                78 John Miller Way
                Suite 430
                Kearny, New Jersey  07032

                LAW OFFICE OF BOYD W. GENTRY
                Attorneys for Defendant
                BOYD W. GENTRY, of Counsel
                4031 Colonel Glenn Highway
                First Floor
                Beavercreek, Ohio  45431

## JURISDICTION

On September 27, 2022, by order of Hon. William M. Skretny, this case was referred to the undersigned for all non-dispositive matters. Dkt. 6. The case is presently before the court on Defendant's motion for sanctions and attorneys fees pursuant to 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1927, Fed.R.Civ.P. 11, and the court's inherent power, filed January 20, 2023. (Dkt. 16).[1]

---

[1] Because the sanctions and attorneys fees Defendant seeks are not "litigation-ending sanctions," the undersigned has authority pursuant to 28 U.S.C. § 636(b) to determine the matter. *See DeCastro v. Kavadia*, 309 F.R.D. 167, 172, n.4 (S.D.N.Y. 2015), should the District Judge disagree, then this Decision and Order should be treated as a Report and Recommendation.

## BACKGROUND

This action was commenced by Plaintiff by Complaint filed June 10, 2022 (Dkt. 1), alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") in connection with Defendant's attempt to collect Plaintiff's outstanding debt of $283.  Specifically, Plaintiff alleged that Defendant had failed to change the status of the debt reported by Defendant on the Experian credit disclosure related to Plaintiff from "disputed" to "not disputed" despite having been informed on March 31, 2022, by March 25, 2022 letter from Plaintiff's then attorney, that Plaintiff no longer disputed the unpaid debt.  Plaintiff alleges that such failure by Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, or legal status, of the debt, and § 1692e(8), including a failure to communicate that the debt is disputed, by communicating credit information known or which should be known to be false, as Plaintiff alleged, by continuing to report a collection item as disputed by Plaintiff after being informed that the debt is no longer disputed by Plaintiff, a so-called "reverse [§ 1692]e8."[2]  By papers filed January 20, 2023, Plaintiff moved, pursuant to Fed.R.Civ.P. 41(a)(2) ("Rule 41(a)(2)"), to dismiss the action with prejudice together with a Certification of [Plaintiff's] attorney and a Memorandum In Support of Plaintiff's Motion to Dismiss With Prejudice Pursuant to Rule 41(a)(2) and attaching Exhibit 1 to Plaintiff's Memorandum of Law (Dkt 17-3) ("Plaintiff's motion").

On January 20, 2023, Defendant filed a Motion for Sanctions and Attorney Fees Under Rule 11, 15 U.S.C. § 1692k, and 28 U.S.C. § 1927 together with Certification of [Defendant's] Counsel and a Memorandum of Law ("Defendant's Memorandum of Law")

---

[2] *See* Defendant's Reply, Dkt. 22, at 5 (referencing the phrase "coined" by Credit Repair Lawyers of America, an organization which initially represented Plaintiff).

2

(Dkt. 16) attaching Exhibits A-E (Dkts. 16-1 – 16-5).[3]  On February 6, 2023, Hon. William M. Skretny, finding that Plaintiff's motion was unopposed, granted Plaintiff's motion and the Complaint was dismissed with prejudice; however, Judge Skretny's order also stated that the court's file would remain open pending resolution of Defendant's motion (Dkt. 20).  On February 8, 2023, Plaintiff filed her Memorandum In Support of Plaintiff's Response and Opposition to Defendant IC System, Inc.'s Motion For Sanctions Under Rule 11, 15 U.S.C. § 1692k and 28 U.S.C. § 1927 (Dkt. 21) ("Plaintiff's Memorandum of Law In Opposition"), attaching as exhibits, Exhibit 1 and 2 ("Exh(s). __ to Plaintiff's Memorandum in Opposition").  Defendant's Reply In Support of Motion For Sanctions and Attorneys Fees Under Rule 11, 15 U.S.C. § 1692k, and 28 U.S.C. § 1927 (Dkt. 22) ("Defendant's Reply") was filed February 15, 2023.  Oral argument was deemed unnecessary.

In response to the court's e-mail requests sent March 17, 2023 for copies of pertinent documents, Defendant provided copies of several of Defendant's business records reflecting Defendant's internal computerized records relating to Plaintiff's account including Defendant's internal administrative records as demonstrating Defendant was responsive to Plaintiff's request.  These records are filed as Court Exhibits A – F.  On March 23, 2023, the court requested Defendant to provide answers to questions regarding the meaning of codes "XB" and "XR" as such codes appear on Defendant's undated Credit Bureau Activity report for Plaintiff (Court Exh. C).  On March 29, 2023, Plaintiff submitted a Declaration of Daniel Zemel, Plaintiff's attorney, in response to the court's March 17, 2023 e-mail.  Defendant responded to the court's

---

[3]  Defendant's Memorandum of Law also states Defendant's motion is brought pursuant to the court's inherent authority.  Dkt. 16 at 3.

March 23, 2023 e-mail request by filing the Affidavit of Michelle Dove, Defendant's General Counsel ("Dove Affidavit").  Dkt. 24.

## FACTS[4]

On March 6, 2022, Plaintiff obtained her Experian credit disclosure report and noticed it stated that Plaintiff owed $283 to a third-party, PMS-50, which debt Plaintiff had until then been disputed by Plaintiff.  On March 25, 2022, Credit Repair Lawyers of America ("CRLA"), representing Plaintiff wrote a letter to Defendant stating that Plaintiff no longer disputed the debt and requested Defendant remove the dispute comment from Plaintiff's account.  *See* Exh. 1 to Plaintiff's Memorandum of Law In Opposition, Dkt. 21-1.  Defendant received Plaintiff's letter on March 31, 2022.  Answer, Dkt. 5 at 4.  On May 1, 2022, Plaintiff again obtained a copy of her Experian credit report which showed Defendant's last reported "tradeline"[5] on April 24, 2022 concerning Plaintiff continued to indicate the debt was still disputed by Plaintiff and that, according to Plaintiff, Defendant had therefore either failed or refused to cause the allegedly inaccurate dispute comment to be removed from Plaintiff's credit report resulting in Plaintiff becoming disqualified for certain residential mortgages.

By e-mail dated August 16, 2022, Defendant requested Plaintiff dismiss the Complaint with prejudice based on Defendant's asserted "system notes" which, according to the e-mail, indicated that on April 1, 2022, Defendant had removed the

---

[4] Taken from the papers and pleadings in this matter.
[5] A tradeline is a term used by credit reporting agencies such as Experian, Equifax and TransUnion, to describe credit, *i.e.*, unpaid debts, accounts listed on one's credit report which also provides information about the creditor and the reported debt including the status of the consumer's account and payment history.  https://www.experian.com/blogs/ask-experian(what-are-tradelines/.

4

disputed designation from Plaintiff's account.  Defendant's Memorandum of Law, Exh. B to Dkt. 16-2 at 1; Court Exh. A (Client Summary referencing ICS10, ICS16) and Exh. B (Account History at 2) ("the August 16, 2022 e-mail.  Specifically, the August 16, 2022 e-mail to Plaintiff's attorney, Daniel Zemel, stated that Defendant's attorney, Boyd Gentry's, request was based on the fact that "my client [Defendant] removed the disputed code on April 1, 2022 as Mr. Hanz [a CRLA lawyer then acting on Plaintiff's behalf] requested in his letter [March 25, 2022].  Here are the lines from my [Boyd] client's system notes which demonstrate this:

> **4/1/2022 9:49:33 AM Removed Dispute Flag/CBR**
>
> **Written correspondence from Consumer Attorney**
>
> **4/1/2022 9:44:33 AM Updated Disputed flag**
>
> **Changed from Yes to No**
>
> **Please let me know that you received this, and that you will dismiss this case with prejudice promptly.  Otherwise, my client with be forced to incur more unnecessary legal expense."**

Dkt. 22-1 at 1-2 attached to Defendant's Reply (bolding in original).

Receiving no response from Plaintiff's attorney to the August 16, 2022 e-mail, on September 2, 2022, Defendant's attorney again e-mailed Plaintiff's attorney that Defendant had not received a response to the August 26, 2022 e-mail and included a copy of a draft motion pursuant to Fed.R.Civ.P. 11(c)(2) ("Rule 11(c)(2)") as required by Rule 11 (a)(2) and a request to dismiss the action.  Dkt. 16 at 12; Dkt. 22 at 2.  On September 16, 2022, Defendant again e-mailed Plaintiff stating that Defendant had still received no response to the August 16, 2022 e-mail or Defendant's September 2, 2022 e-mail, advising that the "Rule 11 safe haven period expired last week," and that

Defendant would file an Answer that day.  *Id.*  Defendant served and filed its answer on September 26, 2022 (Dkt. 5).  By e-mail to Defendant, dated September 28, 2022, Plaintiff's counsel stated "concerning your early production, can you provide me [with] proof the CRAs [Credit Reporting Agencies like Experian] were notified of the removal of [Plaintiff's] dispute comment?" Dkt. 22 at 2.  Defendant responded to Plaintiff's September 28, 2022 e-mail on September 30, 2022 as follows:

> "Daniel – Attached is the business record from ICS [Defendant] that you requested.  This shows the actual 'XR' code that was sent to the CRAs and the date it was transmitted:  April 3, 2022 (Activity Data).  Please confirm that you received this and you will dismiss with prejudice."[6]

Dkt. 22 at 3.

Defendant received no response from Plaintiff to the September 30, 2022 e-mail and the action continued with an entry of a Scheduling Order on November 28, 2022 (Dkt. 9), Defendant's motion, dated December 8, 2022, to opt-out of the court's ADR requirement (Dkt. 10), Plaintiff's motion for a protective order filed December 19, 2022, and Defendant's present motion for sanctions filed January 20, 2023 (Dkt. 16).  On December 27, 2022 (Dkt. 12), Defendant sent a further e-mail to Plaintiff's attorney (Court Exh. D) serving verified answers and document production responsive to Plaintiff's First Set of Interrogatories and Requests for Document Production (Court Exh. E).[7]  As relevant, Plaintiff's Interrogatory No. 4 asked "Did you [Defendant] inform the consumer credit reporting agency to whom you reported your Trade Line on the Plaintiff

---

[6]  A copy of the document (*i.e.*, "business record") referred to by Defendant was provided to the court by Defendant as Court Exh. C, ICS's "Credit Bureau Activity" report.  Exhibit C includes an April 3, 2022 "XR" notation code which Defendant asserts indicates that Plaintiff's request to change the "disputed" notation in Defendant's Tradeline referencing Plaintiff to "not disputed" was sent to various credit reporting agencies including Experian.
[7]  The date of Plaintiff's service of the requested discovery is not provided in the record.

to remove the 'account information disputed by consumer' or 'disputed' notation on the Trade Line.  If not, why did you not so inform the consumer credit reporting agency?" (Court Exh. E at 4).  Defendant's answer to Plaintiff's Interrogatory No. 4 was "Yes."  *Id.*  *See* Defendant's Memorandum of Law (Dkt. 16 at 5); Plaintiff's Memorandum in Opposition (Dkt. 20 at 3).

By e-mail sent January 18, 2023, two days before Plaintiff's scheduled deposition, *see* Plaintiff's Memorandum in Opposition (Dkt. 20 at 3), Plaintiff requested Defendant provide an affidavit averring that the Defendant in fact had requested the credit reporting agencies remove the "disputed" notation from Plaintiff's account.  Dkt. 16-3 at 2-3.  In Defendant's response to this e-mail Defendant stated that "we already provided a verified interrogatory response in that topic along with the business records."  *Id.*  Thereafter, in an e-mail sent to Defendant on the same date, Plaintiff stated "In light of this [Defendant's Answer to Plaintiff's Interrogatory No. 4], we [Plaintiff] are willing to dismiss."  Dkt. 16-3 at 2.  In response to Plaintiff's e-mail, Defendant stated that Plaintiff's proposed conditions (not included in the record) and presumably to be a dismissal without costs to either party were "not acceptable" to Defendant because Defendant had earlier provided Defendant's business records demonstrating Defendant, in Defendant's view, had timely acted to remove the disputed notation from Plaintiff's credit record.  *Id.* at 1.  Plaintiff responded by stating Plaintiff intended to move to dismiss the case notwithstanding Defendant's opposition.  *Id.*  Defendant responded to this message by stating Plaintiff should dismiss with prejudice and "pay all of defendant's attorney's fees."  *Id.*  In opposition to Defendant's motion, Plaintiff filed the Declaration of Crystal Walter dated February 8, 2023, Dkt. 21-2, in which Plaintiff avers,

7

*inter alia,* that the action was filed "<u>after</u> they [Defendant] failed to or refused to remove the dispute comment from their tradeline so I could be eligible for a mortgage." Dkt. 21-2 ¶ 2 (underlining added). In his Declaration, Zemel explained that while he was familiar with the "XB" code he was unfamiliar with the "XR" code as it appeared on the Defendant's Credit Bureau Activity document. *See* Dkt. 23 ¶ 4 (explaining that counsel would typically ask a defendant's witness to identify the meaning of such codes during a Rule 30(b)(6) deposition). Defendant's response to the court's e-mail request includes Dove's assertion that the "XB" code is used by Defendant to "inform the credit reporting agencies" that the account is disputed; the "XR" code is used "to inform" the agencies that "the last code from the Compliance Code field should be removed." Dkt. 24 ¶¶ 4, 5. In her Affidavit, Dove further avers that she "believes" Credit Repair Lawyers of America attorneys, such as Zemel, have access to the Credit Reporting Resource Guide published by the credit reporting industry which explains how the codes are to be used. Dkt. 24 ¶ 7

## DISCUSSION

In support of Defendant's motion, Defendant contends that the action was frivolous when initiated in that Defendant timely responded to Plaintiff's March 25, 2022 Letter Request (Dkt. 21-1 at 2), sent by Gary Hansz, an attorney with Credit Report Lawyers of America, that Plaintiff's tradeline be amended to change the notation that Plaintiff's debt at issue was no longer disputed, that Defendant's internal business records, Court Exhs. A and B, indicated that Defendant timely complied with Plaintiff's

8

request on April 1, 2022, *see* Court Exh. A at ICS16, Court Exh. B at 2,[8] and that according to Defendant's internal business record, labelled Credit Bureau Activity, Court Exh. C, such change on Plaintiff's tradeline was requested by Defendant to be made by the credit rating agencies on April 3, 2022.  *See* Defendant's Memorandum of Law, Dkt. 16, at 8; *see also* Court Exh. C displaying "XR" Compliance Code as the symbol supposedly used by Defendant to indicate Defendant communicated, such change in the status of Plaintiff's account with Defendant to the respective credit reporting agencies.  *See* Dkt. 16 at 8 (asserting that the August 16, 2022 e-mail alerted Plaintiff that her lawsuit was without merit).  The record does not explain factually how such communication by Defendant to these various credit reporting agencies was accomplished.  Defendant further asserts that despite providing "clear evidence" that Defendant "*did* timely request removal of the dispute notation on [Plaintiff's] account," *Id.* (italics in original), Plaintiff refused to dismiss the action causing Defendant to incur unnecessary legal expenses in the amount of $9,545.  Dkt. 16 at 6.  Defendant therefore requests the court grant Defendant's request based on Rule 11, § 1692k(a)(3), § 1927 and the court's inherent power.  Dkt. 16 at 3.  Plaintiff's opposition is predicated on the fact that until Plaintiff received, on December 27, 2022, Defendant's answer to Interrogatory No. 4, Defendant's "internal record was uncorroborated and Defendant provided no evidence that it actually sent the request to Experian (*i.e.*, Defendant did not provide a copy of the request itself)."  Dkt. 21 at 2.  Plaintiff therefore submits that it properly agreed to dismiss the action after receiving Defendant's sworn

---

[8]  Court Exh. B also includes a June 16, 2022 entry stating "Disputed flag changed from No to Yes," inconsistent with Defendant's position.

interrogatory answer which "carried significantly more weight than an uncorroborated internal [business] record."  Dkt. 21 at 2-3.

As relevant, Rule 11 provides that an attorney certifies that by presenting to the court a pleading, the pleading is not being presented for any improper purpose such as to harass or needlessly increase the cost of litigation and that the factual contentions in the pleading have evidentiary support after a reasonable opportunity for further investigation or discovery.  Fed.R.Civ.P. 11(b)(1), (3).  "In considering a motion for sanctions under Rule 11, this court applies an 'objective standard of reasonableness.'"  *Hallmark v. Overton, Russell, Doerr and Donovan, LLP*, 952 F.Supp.2d 507, 510 (W.D.N.Y. 2013) (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996)).  "'[R]ule 11 is violated only <u>when</u> it is <u>patently</u> <u>clear</u> that a claim has <u>absolutely</u> <u>no</u> <u>chance</u> <u>of</u> <u>success</u>.'"  *Hallmark*, 952 F.Supp.2d at 510 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted)) (underlining added).

Here, it was not unreasonable for Plaintiff to believe, as of August 16, 2022 and of September 26, 2022, upon receiving Defendant's e-mails, despite Defendant's assertions in the e-mails that Defendant had, according to Defendant's internal business records, timely complied with Plaintiff's March 25, 2022 request to delete the "dispute" designation from Defendant's tradeline concerning the Plaintiff's debt, based on Plaintiff's reading on May 1, 2022, of her Experian credit report, which report indicated Plaintiff still had continued to dispute the debt, that Defendant had failed to comply with Plaintiff's March 25, 2022 request.  Defendant, at that point in time, did not attempt to refute Plaintiff's allegation that as of May 1, 2022, Plaintiff's Experian credit report

10

continued to include the "disputed" designation thereby requiring Plaintiff to accept Defendant's asserted business records as constituting "clear evidence," *Hallmark*, 952 F.Supp.2d at 510, that Plaintiff's FDCPA claim against Defendant had "'absolutely no chance of success.'" *Id.* (quoting *Oliveri*, 803 F.2d at 1275). As a reasonable attorney, Plaintiff's counsel could therefore conclude that Defendant's attorney's recitation of the content of Defendant's business records, ostensibly indicating Defendant had complied with Plaintiff's earlier request to remove the "disputed" designation, was insufficient evidence of Defendant's compliance requiring Plaintiff's dismissal of the lawsuit as Defendant had insisted upon. Moreover, on September 26, 2022, Plaintiff requested Defendant provide "proof" Defendant had in fact notified the "CRAs" (credit reporting agencies) of the removal of the "dispute" notation on Plaintiff's account. *See* Dkt. 22 at 2. Defendant responded to this request on September 30, 2022 by including a copy of a different defendant's internal business record, the Credit Bureau Activity report (Court Exh. C), Dkt. 22 at 3, indicating an "XR code" next to Plaintiff's account number with an activity date of April 3, 2022 following the "XB disputed" entry on December 1, 2019. *See* Court Exh. C. According to Defendant, "XR" is a "(removal) code," Dkt. 22 at 3, however, that factual assertion was not included in the September 30, 2022 e-mail response sent by Defendant to Plaintiff; rather it appears in Defendant's Reply to Plaintiff's Opposition to Defendant's Motion filed February 15, 2022 and the Dove Affidavit. *See* Dkt. 22 at 2-3 (*passim*); Dkt. 24 ¶ 5.

The information provided by Dove's Affidavit does not require a different conclusion for two reasons. First, although Dove asserts that she "believes" Credit Repair Lawyers of America, including Zemel, have access to the Credit Reporting Guide

11

which explains the "XB" and "XR' codes and how they are to be used, Dkt. 24 ¶ 7, Zemel denies knowledge of the "XR" code.  Dkt. 23 ¶ 4.  Given such factual dispute, the court finds that it is speculative whether Zemel had knowledge of the meaning of the "XR" code as of September 2022.  Second, and more significantly, nowhere in the Dove Affidavit does Dove explain how the report of the change in the coding as to Plaintiff's dispute of the account was actually "sent to the credit reporting agencies,"  Dkt. 24  ¶¶ 4, 5, nor does the affidavit state such code change from "XB" to "XR" was, in fact, sent, as relevant to this case, to Experian following the April 3, 2022 entry on the Defendant's Credit Bureau Activity report.

      Thus, it was not until Plaintiff received  Defendant's verified answers to Plaintiff's interrogatories on December 21, 2022, *see* Court Exh. E at ¶ 4, that Plaintiff received sworn confirmation, *i.e.*, the "proof" sought by Plaintiff's September 28, 2022 e-mail, Dkt. 22 at 2, *see Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th, 95, 101 (2d Cir. 2022) (considering as admissible evidence "answers to interrogatories"), that Defendant had timely removed the dispute designation from Plaintiff's tradeline account maintained by Defendant and that Defendant had in fact sent this change in status of Plaintiff's account to the credit reporting agencies, including Experian.  *See Galin v. Hamada*, 283 F.Supp.3d 189, 203 (S.D.N.Y. 2017) ("*Galin*") (finding Rule 11 sanctions proper where, upon the <u>close of discovery</u>, plaintiff and his counsel knew that their allegations on the "central issue" in the case were "utterly lacking in support").  Here, similar to the facts in *Galin*, Plaintiff definitively learned through discovery that the Defendant had timely corrected the "disputed" notation in Plaintiff's record with Defendant.  Accordingly, on this issue the court cannot find that as of Defendant's

September 30, 2022 e-mail it was "patently clear" that [Plaintiff's] claim had "'absolutely no chance of success,'" *Hallmark*, 952 F.Supp.2d at 510 (quoting *Oliveri*, 803 F.2d at 1275), sufficient to find a violation of Rule 11.  The court therefore finds that both when Plaintiff's claim was filed and as of September 30, 2022, when Plaintiff was requested by Defendant to dismiss the action based on unsworn copies of Defendant's business records, not then fully explained, the Plaintiff's claim was neither fruitless nor brought in bad faith.  *Hallmark*, 952 F.Supp.2d at 511.  "[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion they must have been undertaken for some improper purpose such as delay.'"  *Enmon v. Prospect Capital Corp.,* 675 F.3d 138, 143 (2d Cir. 2012) (internal citations omitted).  Here, Plaintiff's insistence on a reasonable degree of proof that Defendant had fully complied timely with Plaintiff's request demonstrates the absence of bad faith.  Accordingly, Defendant's motion based on Rule 11 is DENIED.

Under § 1692k(a)(3), the court may award reasonable attorneys fees to a defendant when the FDCPA action brought by plaintiff was "in bad faith and for the purpose of harassment."  18 U.S.C. § 1692k(c)(3).  *See Kurzdorfer v. Constar Financial Services, LLC,* 490 F.Supp.3d 663, 671 (W.D.N.Y. 2020).  Such an award constitutes "'drastic relief,'" *Kurzdorfer,* 490 F.Supp.3d at 691 (quoting *Romeo v. FMA Alliance, Ltd.* 2016 WL 3647868, * 15 (E.D.N.Y. June 6, 2016)).  The standard for awarding attorneys fees under § 1692k(a)(3) is "'quite stringent.'"  *Id.* (quoting *Nwaizuzu v. Dunlap Fardiner Attorneys at Law, LLP,* 2019 WL 5491283 at * 1 (N.D.Ga. Jul. 8, 2019)).  Absent evidence that "'plaintiff both knew her claim was meritless and pursued it with the purpose of harassing the defendant,'" *Kurzdorfer,* 490 F.Supp.3d at 671 (quoting

*Blumenfeld v. Advanced Call Ct. Techs., LLC*, 2015 WL 6442621, at * 3 (E.D.N.Y. Oct. 23, 2015)) (underlining added), an award of sanctions pursuant to § 1692k(a)(3) should be denied. *Id.* Here, for the same reasons found by the court sufficient to deny Defendant's motion brought pursuant to Rule 11, Discussion, supra, at 10-13, the court also finds Defendant's sanctions request falls short in that there is a lack of evidence that as of September 30, 2022, Plaintiff knew her claim was meritless and yet pursued it with the purpose of harassing Defendant. *Kurzdorfer,* 490 F.Supp.3d at 671. Rather, it was not until Plaintiff received Defendant's verified interrogatory answers on December 27, 2022 and subsequently agreed, on January 18, 2023, to dismiss the action that there existed grounds to find Plaintiff would be guilty of pursuing a baseless claim had Plaintiff insisted in pursuing her claim at that time. *See Rhinehart v. CBE Group, Inc.,* 714 F.Supp.2d 1183, 1186 (M.D.Fla. 2010) (awarding defendant's attorneys fees pursuant to § 1692k(a)(3) where it became clear <u>during discovery</u> that [plaintiff's] claims "had no factual basis whatsoever") ("*Rhinehart*"); *see also Necak v. Select Portfolio Servicing, Inc.*, 2020 WL 4284923 at * 4 (S.D.Ohio July 27, 2020) (finding that plaintiff's "continued pursuit of her claim despite [d]efendant's communication with [p]laintiff regarding the merit of her [c]omplaint does not constitute sufficient additional facts supporting bad faith or harassment"). As in *Rhinehart,* Plaintiff became aware, through discovery, that her claim lacked merit; however, unlike plaintiff in *Rhinehart*, in the instant case, Plaintiff promptly agreed to dismiss the action. Moreover, "the district court maintains discretion to award a debt collector attorneys' fees." *Kurzdorfer,* 490 F.Supp.3d at 671 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 96 (2d Cir. 2008)). Accordingly, Defendant's motion based on § 1692k(a)(3) is DENIED.

Defendant also seeks sanctions based on Plaintiff's counsel's violation of 28 U.S.C. § 1927 and the court's inherent power.  Under § 1927, "the touchstone of an award" is "bad faith."  *Clayson v. Rubin & Rothman, LLC*, 751 F.Supp.2d 491, 497 (W.D.N.Y. 2010) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO,* 948 F.2d 1338, 1345 (2d Cir.1991)).  *See also Enmon*, 675 F.3d at 143 (bad faith required for sanctions pursuant to court's inherent power) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3 323, 333 (2d Cir. 1999)).  Here, again, on this record, it cannot be said that Plaintiff's counsel's actions in failing to dismiss this action based solely on Defendant's proffered unverified business records purporting to indicate Defendant's compliance with Plaintiff's March 25, 2022 request to change the "disputed" account designation to "undisputed," was "'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as a delay.'"  *Clayson,* 751 F.Supp.2d at 497 (quoting *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO,* 948 F.2d at 1345).  Further, courts require a "particularized showing of 'bad faith to qualify the use of the court's inherent power.'"  *Oliveri*, 803 F.2d at 1265.  Until Plaintiff received, in December 2022, Defendant's verified answer affirmatively stating that the amended tradeline on Plaintiff's account had in fact been sent to the credit reporting agencies, Plaintiff's counsel could not be charged with knowledge of sufficient facts upon which it could be objectively concluded that Plaintiff's claim lacked merit. *Compare Enmon*, 675 F.3d at 145-46 (finding plaintiff's counsel's actions in falsely asserting facts concerning the arbitration award constituted sanctionable conduct demonstrating counsel's actions were in bad faith pursuant to § 1927 and the court's

15

inherent power). Accordingly, Defendant's motion brought pursuant to § 1927 and the court's inherent power lacks a "particularized showing of bad faith," *Oliveri*, 803 F.3d at 1265, on the part of Plaintiff's counsel and Defendant's motion on these grounds is therefore DENIED.

## CONCLUSION

Based on the foregoing, Defendant's motion (Dkt. 16) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  April 4, 2023
            Buffalo, New York